(No. 1726, December 7, 1914)

STATE OF NEW MEXICO, Appellee, vs. PORFIRIO CHAVES, Sheriff Lincoln County, etc., Appellant.

### SYLLABUS BY THE COURT.

1.  Where a county officer is found guilty of misconduct in office under the provisions of Chapter 36, S. L. 1909, the verdict of the jury must be supported by substantial evidence, and, where the verdict is not warranted by the evidence the appellate court will set it aside.  Held, that there was no substantial evidence to sustain the verdict in this case.

P. 585

Appeal from District Court, Lincoln County; Edward L. Medler, Presiding Judge. Reversed and Remanded.

GEORGE W. PRICHARD, G. B. BARBER, for Appellant.

Failure, neglect and refusal. 30 Cal. 644; 68 Ga. 324; 127 N. W. 1023; 31 L. R. A. 566; 58 Ohio St. 584; 56

Am. St. Rep. 781; 80 Mich. 187; 45 N. W. 80; 29 N. J. L. 99; 24 Pickering 370; 93 N. M. 808; 27 Atl. 85; 100 Fed. 384; 22 S. W. 134; 45 N. W. 694.

IRA L GRIMSHAW, Asst. Attorney General, for Appellee.

Cause of action. Chap. 36, L. 1909; Secs. 827, 831, C. L. 1897; Sec. 1, Chap. 5, L. 1899; Secs. 1804; 3619, C. L. 1897; Sec. 2, Art. 10 Const.

Illegal fees. 17 N. M. 81; Sub-Sec. 10, Sec. 867, C. L. 1897.

Charge that books were not properly kept. Chap. 61, L. 1912.

Charge as to uncleanliness of jail. 827, C. L. 1897.

## OPINION.

ROBERTS, C. J.—At the March Term, 1914, of the district court of Lincoln county, the grand jury of said county presented an accusation in writing against the appellant, who was then sheriff of said county, charging him with knowingly demanding and receiving illegal fees as such sheriff, with failing to keep the dockets and other books prescribed by the traveling auditor, and that the books he did keep were not properly kept; with allowing the county jail to remain in a filthy and unsanitary condition, and that appellant had failed, neglected and refused to discharge the duties of his office. The presentment set forth the specific acts, upon which the general charges above stated were predicated. Upon a trial before a jury the defendant was found guilty, and judgment of removal from office followed. From this judgment appellant appeals, and assigns twenty-eight different grounds for a reversal. We will not undertake, nor will it be necessary to review all the grounds assigned.

The prosecution was instituted under Section 2, Chapter 36, S. L. 1909, which reads as follows:

"The following shall be causes for removal of any officer belonging to the class mentioned in Section 1 of this act:

1.   Conviction of any felony or of any misdemeanor involving moral turpitude;

2.   Failure, neglect or refusal to discharge the duties of the office, or failure, neglect or refusal to discharge any duty devolving upon the officer by virtue of his office;

3.   Knowingly demanding or receiving illegal fees as such officer;

4.   Failure to account for money coming into his hands as such officer;

5.   Gross incompetency or gross negligence in discharging the duties of the office;

6.   Any other act or acts, which in the opinion of the court or jury amount to corruption in office or gross immorality rendering the incumbent unfit to fill the office."

Considering first the evidence, as to charging illegal fees, and the legal principles involved, we quote the following from the brief of the able Assistant Attorney General:

"The evidence shows that defendant presented a bill to the county commissioners for conveying Sotero Archuleta to the insane asylum and that the mileage traveled was charged to the county at the rate of twelve and one-half cents per mile. The commissioners approved the bill and paid it to the extent of $170.00. The evidence also shows that the defendant presented a bill to the district court in April, 1913, wherein he charged mileage for services at the rate of twelve and one-half cents per mile, which bill was paid by the district clerk from the court fund, but the money was subsequently accounted for by deductions made in the readjusted bill of January, 1914, presented to the county commissioners. In effect, then the situation is that defendant presented a bill to the clerk of the court for payment from the court funds charging twelve and one-half cents per mile, and that the bill was paid, but subsequently the payment was annulled and the defendant charged simply with $1,500.00 received. In the re-adjusted bill, the services for which defendant charged at the rate of twelve and one-half cents per mile in the bill to the district court, were practically revised and charges made for those services on the basis of actual expenses.

Since the constitution became effective county officers are prohibited from receiving fees unto themselves. The constitution provides for the fixing of salaries for county officers by the legislature and eliminates fees as a part of their salary or compensation. However, there is no inconsistency or repugancy between the statutes prescribing the fees to be charged in certain instances and the constitutional provision. The practical effect of the constitution is that the officer makes the charges according to the requirements of the statutes and is then obliged to deliver the money so received into the county treasury, for if he retained it he would violate the constitutional provision. All fees collected by him must belong to the county, whose officer he is. We understand that the traveling auditor of the state informed county officers that fees collected by them must be paid into the county treasury and a receipt taken therefor.

The constitutional provision cited supra, compels this money to be paid into the county treasury. It has been held to be self executing, in the case of Delgado v. Romero, 17 N. M. 81, 86.

In order to fully understand what principles ought to apply in this case it is well to determine what the legislature attempted to correct by the passage of Chapter 36 of the laws of 1909.

At the time the 1909 law was passed county officials as well as other classes of officers, received the major part of their compensation from fees collected by them. Subsection 3 of Section 2 of the act, making one ground for removal, the knowingly demanding or receiving illegal fees, was intended to punish officials who knowingly demanded or received fees in excess of that allowed by law. For instance, if the sheriff charged or demanded or received $2.00 for levying an execution and making a return thereon, he would be within the provision cited, because the law permitted him to make a charge for such services of only $1.50. It is clear that the provision applied when the officer prostituted his office by compelling the payment of sums, as fees, to him of a higher amount or rate than allowed by the law. The fees belonged to the official, and the

excess, likewise, would become the property of the official under such illegal action.

In the case at bar the bills presented to the district court for payment of services in serving process during the three terms of court were paid by the district court from its fund. We are told that fifteen hundred dollars was so paid. The bills were all based upon the theory that for such service the defendant was entitled to charge twelve and one-half cents per mile. Sub-section 10 of Section 867 of the Compiled Laws of 1897, with its amendments, permits such a charge to be legally made. Therefore, we conclude that the sheriff committed no act sufficient to authorize his removal from office by charging twelve and one-half cents per mile for service of process for the district court.

Fifteen hundred dollars of that money was apparently retained by the sheriff until a complete re-adjustment of his accounts was had in January, 1914, when the commissioners deducted the fifteen hundred dollars so received by him from the total of the bill presented to them at that time, so that in effect, while the sheriff had the possession of that money for some time, it cannot be said that he received the money to his own use. It is very clear to us that the sheriff believed that the moneys received from the court fund belonged to him and continued to so believe until the traveling auditor informed him differently. The court should know that the items which made up the fifteen hundred dollars, which had been received from the court fund, were all re-adjusted and the charges made on the basis of actual expenses, as we understand the record. So the effect of the transaction is that the commissioners deducted fifteen hundred dollars of the bill based on actual expenses, which was presented in January, 1914, and paid the defendant the balance, less certain other sums which he had formerly received. He charged no *illegal* fee, for the law permitted him to charge twelve and one-half cents per mile. If he can be said to have been derelict in duty at all, it consisted in retaining the fifteen hundred dollars paid from the court fund. But there is no allegation in the presentment that the defendant knowingly retained any

. money belonging to the county, and we cannot assume that
the jury were justified in finding him guilty of retaining
the money, in the absence of such charges in the present-
ment.   So far as we are concerned, we admit that the ver-
dict of the jury cannot stand as to the charge of illegal
fees in respect to the bills presented to the district court,
. and subsequently paid by the commissioners on the basis
of actual expenses."

His statement of the facts we have verified by a careful
examination of the transcript, and find it to be correct, and
we agree fully with the foregoing statement of the law.
This being true we can but conclude that there was no evi-
dence to justify a verdict of guilty on this count of the
charge.

On May 3rd, 1913, the appellant presented a bill to the
county commissioners for conveying Sotero Archuleta to the .
insane   asylum at Las Vegas; this bill was approved and
paid July, 1913, in the sum of $170.00.   The appellant at-
tempted to show, upon the trial that this charge also in-
cluded expenses incurred by him in taking a boy to the
reform school, at Springer, taken apparently at the same
time, but the court refused to permit him to offer any evi-
dence whatever to establish this fact. We cannot refrain
from saying, that we cannot understand upon what theory
the court excluded this evidence.   Certainly the defendant
. should have been allowed to establish any fact which tend-
ed to show his good faith in the amount of the charge
made.   County sheriffs, as is well known, are not, as a
general rule, expert accountants or bookkeepers, and if
they were to be turned out of office for every mistake
made, regardless of the fact that such a mistake was in ·
nocently made, without corrupt motives, we would soon be
without peace officers.   But regardless of the facts sought
to be established by the excluded evidence, from the evi-
dence in the record it is apparent that the sheriff was hon-
estly mistaken as to the law.   He thought he was entitled
to charge twelve and one-half cents per mile for transport-
ing patients to the insane asylum.   And even had the
amount been allowed the fees would not have belonged to
the sheriff, as, under the constitution he would be requir-

ed to return the same to the county treasurer. The attorney general says:

"It seems plain to us that the defendant honestly believed that he was entitled to charge that sum (twelve and one-half cents) for each mile traveled. But eliminating all theories of mistake and viewing the transaction in the light of a 'demand' for illegal fees, what is the result? In the first place, the charge cannot be considered in the light of a fee. The charge, when properly made, is for reimbursement of moneys expended in the service of conveying an insane person to place of confinement. Does such a circumstance come within the statute? The primary object of the statute was to prevent over-charging for services rendered. The defendant must have knowingly rendered such a bill and demanded its payment. We assume, without argument, that the evidence must show that there was no honest mistake in the transaction—that there must be a negation of honest mistake. The evidence of the bill presented, considered alone and without any extrinsic evidence, plainly shows that the defendant was either ignorant of what law governed the charges, or that he honestly believed that he was entitled to receive twelve and one-half cents per mile for such service. He claimed twelve and one-half cents per mile in the first bill presented."

In view of the evidence and the concession of the law officer of the state, we can but conclude that the evidence on this phase of the case did not justify a verdict of guilty.

The next charge upon which defendant was tried, reads as follows.

"That said defendant, up until the time the traveling auditor called on him to examine his book of accounts and records, which he is required to keep as sheriff of Lincoln county, and which said time was about the eighteenth day of December, A. D. 1913, had never kept or attempted to keep any docket, cash book, fee book or other account-book or record showing a record of fees and other matters in connection with his said office as sheriff of Lincoln county, New Mexico, and that when said traveling auditor called on said above named defendant, for the purpose of exam-

ing his accounts and records, which was during the fore-part of January, A. D., 1914, he found that what records said sheriff had, were improperly kept, and that all of said dockets, cash book, fee books and other account books or records had been written up or prepared, by said defendant sheriff, within a few days just preceding the day that the same was turned over to the said traveling auditor."

If the facts stated are sufficient to constitute a cause of removal, the evidence wholly fails to establish the same. The sheriff testified that he kept books of his accounts from the time he was inducted into office, which were produced upon the trial. It is true, these books were not models of expert bookkeeping, but it is plain that the sheriff honestly attempted to comply with the law, and the books were in such shape that the condition of his accounts could be ascertained by an accountant. This charge therefore fails.

As to the charge that the sheriff failed to maintain the jail in a sanitary condition, the Assistant Attorney General says:

"In our judgment and opinion the evidence is not sufficient to support the verdict of the jury on this allegation and charge. Only ordinary conditions are shown in reference to the condition of the jail, and when considered in toto fail to make out any case of neglect of duty. The fact that the toilet was constructed without a cover, together with the fact that the flushing system depended primarily for its efficiency upon the supply of the water from the tank connected with the wind mill, together with the known fact that the tank becomes dry because of lack of wind, when considered also by the evidence of the state that tubs of water were furnished to flush the toilets when the wind mill supply gave out, together with the other evidence as to dirt and filth, all indicates that there was no neglect of duty upon the part of the sheriff."

We agree with this conclusion:

We do not believe the defendant was awarded a fair and impartial trial. While we do not propose to review all rulings of the court in admitting and excluding evidence, because not necessary to a determination of the case, a few examples will disclose the basis for the above expression.

The state introduced Charles Gist as a witness, who tes-

tified that he was a prisoner in the county jail; he detailed the condition of the jail as to cleanliness; said he was called as a witness before the grand jury against the sheriff, that other prisoners were before the grand jury; that after they had so testified before the grand jury, he heard the sheriff say that "he would feed us on bread and water," thereby implying that the threat was made because such prisoners had testified before the grand jury. When the defendant was upon the stand, he was asked by his counsel if he had made the statement attributed to him by the state's witness, to which he replied, "I did." Thereupon his counsel propounded the following question:

"State to the court and jury what was the occasion of your making that statement to that prisoner, what caused you to make that?" This question the witness was not permitted to answer. The question was changed by counsel in various ways, in order to obviate possible objection to the form of the question, and elicit his version of the conversation testified to by the state's witness, all without avail. From the questions propounded it is apparent that the defendent sought to show that the statement attributed to him was made because the prisoner refused to work and not because of his testimony before the grand jury. It was only fair to the defendant that he should be allowed to give his version of the conversation, as to which Gist testified.

Another illustration is afforded by the following: Ramon Lujan had been janitor at the county jail for some months preceding the return of the accusation against the sheriff. He was called as a witness by the appellant, and after testifying as to his service in that capacity, and means of observation, this question was propounded to him:

"Do you know what condition the jail was kept in, as to cleanliness or otherwise, during that time?"

This question was held objectionable by the court and the witness was not permitted to answer.

On cross examination the defendant stated that some items had not been transferred from his original books to the books furnished him by the traveling auditor; on re-direct examination the following question was asked defendant:

"Mr. Chaves, you have stated in your cross examination that there was some things in some of these books of yours that have not been transferred to the books furnished you by the auditor, will you state why those things have not been transferred."

This question the court held to be objectionable, and defendant was denied all opportunity to explain the failure if he could have done so.

On cross examination the state's attorney was permitted to ask defendant as to an arrest made by him of a man named Brady, although no such specification was contained in the charge. The defendant testified that the arrest was made in Lincoln; that he saw the defendant in Carrizozo the day before he arrested him and told him that he had a warrant for his arrest, but that before he had made the arrest Brady left and went to Lincoln. Defendant's attorney objected to the questions, on the ground that no such charge was specified in the accusation. Thereupon the district attorney said: "He is charged with having charged twelve and one-half cents a mile for every process he ever served." The court remarked: "The man was arrested at Carrizozo and he wanted twelve and one-half cents a mile for going to Lincoln." This remark by the court, assuming that the questions were proper, necessarily was highly prejudicial to the defendant, for he had just stated that the defendant was not arrested in Carrizozo but in Lincoln, and the court, by the remark squarely challenged the truth of the sheriff's previous statement, and, as is well known, the jury is always very prone to give absolute credence to every statement made by the court. Courts should be very careful, in the trial of a cause before the jury, to refrain from remarks, or statements which may have a tendency to create an impression in the minds of the jury that the court disbelieves, or believes any evidence that has been given, or that he leans more strongly toward one side than the other.

This question propounded to defendant was excluded:

"Is it not true that when you presented these bills (referring to the bills presented for taking the insane woman to the asylum) that you requested the county commission-

·ers to allow you your expenses for these trips, and stated to them that you offered it only to show that the services were rendered?"

The ground upon which it was excluded was that no foundation had been laid for such evidence. The statute (Sec. 1. Chap 5 L. 1899) authorizes the sheriff to charge twelve and one-half cents per mile for certain pro·cesses, etc.. served by him, and for transporting prisoners. Under the constitution the sheriff is precluded from receiving any fees to his own use, but is required to collect and turn said fees over to the county treasurer. It is a disputed question, as whether such fees are to be collected from the county, for services performed, and then returned to the county treasurer by the officer. But be this as it may, the sheriff certainly should have been permitted to offer ·such explanation as he could for his acts and conduct, and it was for the jury to say after hearing such explanation, whether he "knowingly" did the acts charged against him.

Nor would the court permit the defendant to show by the record that the commissioners had entered an order allowing him the sum of two thousand dollars per annum, as an advance on his salary; this, on the theory that the commissioners had no right to make any such allowance. Assuming that the court was right as a matter of law, with·out so deciding, however, this evidence should have gone to the jury. No law fixing the compensation for county officers has been enacted. The attorney general of the state ·advised boards of county commissioners that they had the power to do what was done in this case. (See report of attorney general, 1912, 1913, pp. 183-184.) Can it be said, that a court can justly refuse to permit a county officer to show an act, which was done under the advise of the law officer of the state, where the good faith of the officer is vital to his defense? We think not.

· Presumably the appellant was elected to the office of ·sheriff of Lincoln County by a majority vote of the electors of that county. The verdict in this case stigmatizes the appellant as a wrong doer, and deprives him of the enjoyment of the office to which he was elected. Such a verdict cannot be sustained unless it is supported by

586        SUPREME COURT OF NEW MEXICO

Hasbrouck, Supt. Ins., v. Carr, 19 N. M. 586

substantial evidence, nor should a conviction be affirm-
ed where the record so plainly shows that the defendant
was consistently and persistently deprived of an opportun-
ity to present his defense, under the well established rules
of judicial procedure.

For the reasons stated, the judgment of the trial court
will be reversed and the cause remanded, with instructions
to award the  defendant  a new  trial, and,  IT IS SO
ORDERED.